IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHRISTINE S., JAMES A., individually and on behalf of T.A., a minor;<br><br>Plaintiffs,<br><br>v.<br><br>BLUE CROSS BLUE SHIELD OF NEW MEXICO, and the LOS ALAMOS NATIONAL SECURITY, LLC HEALTH PLAN;<br><br>Defendants. | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:18-cv-00874-JNP-DBP<br><br>District Judge Jill N. Parrish |

Defendants Blue Cross Blue Shield of New Mexico ("BCBSNM") and Los Alamos National Security, LLC Health Plan (collectively, "Defendants") move to dismiss the Amended Complaint filed by plaintiffs Christine S., James A., and T.A. (collectively, "Plaintiffs") for failure to state a claim. Plaintiffs' Amended Complaint alleges healthcare insurance coverage violations of the Employee Retirement Income Security Act of 1974 ("ERISA") and the Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act"), an amendment to ERISA. Having considered the parties' briefs and argument advanced at a hearing on December 16, 2019, the court grants in part and denies in part the Defendants' Motion to Dismiss (the "Motion").

## I.  BACKGROUND

Plaintiff Christine S., an employee at Los Alamos National Security, LLC, maintained a healthcare insurance policy through a self-funded employee welfare benefits plan (the "Plan"). BCBSNM operates in New Mexico as an unincorporated division of Health Care Service Corporation, a Mutual Legal Reserve Company, and is the third-party claims administrator for the

1

Plan. The Plan covered Christine S. as the Plan participant and James A. and T.A. as eligible beneficiaries. T.A. is a minor and Christine S. and James A. are his parents.

From an early age, T.A. has been treated for mental health and behavioral conditions, including severe anxiety, attention-deficit/hyperactivity disorder ("ADHD"), depression, and emotional dysregulation. T.A. has also been diagnosed on the autism spectrum. Throughout his life, T.A. has had difficulty with structured activities and has struggled to maintain healthy relationships with peers and family. T.A. would sometimes self-harm by cutting himself and banging his head. When T.A. was around ten or twelve years old, he first attempted suicide by hanging himself in his closet.

T.A. began seeing a therapist and taking medications, but with limited effect. Instead, his social interactions became more strained. As a child, T.A. ran away from home on multiple occasions. He was disruptive and got into fights at school, which led to multiple disciplinary actions including suspensions. T.A. continued self-harming by cutting and would draw on himself to disguise the severity of his injuries. He started refusing to go to school and withdrew from social activities. In May 2015, T.A. got into a disagreement with his parents and again attempted to commit suicide by hanging. T.A. then began seeing a different psychiatrist and his parents conferred with an educational consultant, who recommended that T.A. seek professional inpatient care at a residential treatment center.

Plaintiffs admitted T.A. to a therapy program at Elevations/Seven Stars Residential Treatment Center ("Elevations") on November 23, 2015. Elevations is a "licensed residential treatment facility located in Utah that specializes in treating individuals on the autism spectrum" and "provide[s] sub-acute treatment to adolescents with mental health, and/or behavioral problems." Am. Compl. ¶ 4. T.A.'s Elevations admission notes state in part that he was "suicidal

with urges to self-harm" and he appeared "hopeless, . . . scared at time[s], frantic with his retorts, reports hearing voices at night with bad dreams," and had "judgment severely impaired in context to [his] developmental age." *Id.* ¶ 17. Elevations staff immediately placed T.A. in suicide and self-harm precaution protocols. *Id.* During his time at Elevations, T.A.'s challenges continued and he "threw frequent tantrums, ignored his responsibilities, destroyed property, and attacked other residents." *Id.* ¶ 24. On February 8, 2016, Dr. Gordon Day conducted a multidisciplinary evaluation of T.A., in which he observed that T.A. still "appears to be very vulnerable to emotional distress" and that "[h]is safety would be at risk if he were to return home to attend a public school." *Id.* ¶ 18. Dr. Day recommended "[a] very high level of residential therapeutic and academic support." *Id.* Accordingly, T.A. continued to receive care at Elevations until April 15, 2016.

After T.A. left Elevations, Christine S. and James A. then enrolled him in a different residential treatment program at Cherry Gulch on April 18, 2016. *Id.* ¶ 28. Cherry Gulch "is a therapeutic boarding school located in Idaho that is licensed by the state as a residential care facility." *Id.* ¶ 4. Cherry Gulch also provides sub-acute level of care for mental health and behavioral conditions. *Id.* During T.A.'s first week at Cherry Gulch, he attempted to run away from the program. *Id.* ¶ 28. When Cherry Gulch staff found him walking along a road toward a dam, T.A. admitted he was intending to jump off of the dam to commit suicide. *Id.* Cherry Gulch staff immediately placed T.A. on suicide watch. *Id.* During the course of his treatment at Cherry Gulch, evaluators consistently reiterated that T.A. "greatly needs to be in [an] intensive recommended 'residential therapeutic environment' so that he can heal, learn, and succeed in being his best self." *Id.* ¶ 33. After several months at Cherry Gulch, on November 9, 2016, T.A. again ran away and attempted suicide by jumping from a high rock. *Id.* ¶ 35. He suffered injuries

including a broken wrist and stated after the incident that he "just wanted to die." *Id.* Cherry Gulch

again placed T.A. on suicide watch. *Id.*

## A.  BCBSNM'S INSURANCE COVERAGE OF T.A.'S TREATMENT

Plaintiffs filed insurance claims with BCBSNM for coverage of T.A.'s treatment at

Elevations and Cherry Gulch. BCBSNM denied paying benefits for approximately two months of

T.A.'s residential care at Elevations and covered one week of his treatment at Cherry Gulch.

Plaintiffs exhausted internal and external appeals of BCBSNM's initial coverage denials, all of

which BCBSNM rejected. Plaintiffs allege that BCBSNM's denial of benefits for T.A.'s treatment

at Elevations and Cherry Gulch caused Plaintiffs to incur over $243,000 in medical expenses. *See

id.* ¶ 37.

### 1.  Denial of Coverage for Elevations Treatment

On February 12, 2016, BCBSNM sent Plaintiffs a letter denying payment for T.A.'s

treatment at Elevations from that day forward. *Id.* ¶ 19. This denial occurred four days after T.A.'s

evaluator at Elevations, Dr. Gordon Day, opined that T.A.'s "safety would be at risk if he were to

return home to attend a public school" and he recommended "[a] very high level of residential

therapeutic and academic support" such as that provided by Elevations. *Id.* ¶ 18. However, the

BCBSNM reviewer stated that BCBSNM had conducted a medical necessity review and found

that T.A. "did not meet [Milliman Care Guidelines ("MCG")[1]] for continued treatment" at a

"mental health acute inpatient level of care." *Id.* ¶ 19. The reviewer concluded that T.A. was "not

---

[1] Defendants describe the Milliman Care Guidelines as "evidence-based clinical guidelines that are used by over 1,000 hospitals, seven of the largest eight U.S. health plans, and Centers for Medicare and Medicaid Services contractors to determine whether certain medical services are medically necessary." ECF No. 29 at 3 n.2. Plaintiffs have not represented their description of the Milliman Care Guidelines.

an acute danger to [himself] or others," that he was "not psychotic" and "ha[s] a supportive family," and that he could "be safely treated in a less restrictive setting," such as outpatient care. *Id.*

Plaintiffs submitted a level one appeal of BCBSNM's benefits denial on August 10, 2016. *Id.* ¶ 20. Plaintiffs asked for various clarifications regarding the basis for BCBSNM's denial, including what version of the MCG that BCBSNM used to make its decision. *Id.* Plaintiffs included copies of T.A.'s medical records in their appeal and contended that BCBSNM violated ERISA by "not making specific references to the medical records it had used to come to the decision to deny care," "by not providing the name and qualifications of the reviewer," and by not taking into account the medical opinions of those who evaluated T.A. and recommended continued residential treatment. *Id.* ¶¶ 21, 23, 24. Plaintiffs also stated in their appeal that BCBSNM improperly used acute inpatient criteria to evaluate coverage for the "strictly sub-acute" nature of care T.A. received at Elevations. *Id.* ¶ 22.

On August 22, 2016, BCBSNM sent Plaintiffs a letter upholding the denial of benefits for T.A.'s treatment at Elevations. *Id.* ¶ 25. It stated that T.A. had not meet care guidelines for continued residential treatment because he was "not a danger to [himself] or others," "not noted to be psychotic or manic," was "medically stable," was "compliant with [his] medication regime," and was "not violent or aggressive." *Id.* On November 1, 2016, Plaintiffs requested that BCBSNM's denial of continued coverage at Elevations be evaluated by an external review agency. *Id.* ¶ 26. Plaintiffs argued that BCBSNM wrongfully denied their benefits because T.A.'s treatment "was medically necessary and in accordance with generally accepted standards of medical practice." *Id.* Plaintiffs emphasized that they had attempted "lower levels of treatment . . . numerous times without significant effect," and that T.A.'s mental health providers recommended residential treatment. *Id.* On December 26, 2016, the external review agency upheld BCBSNM's

denial of continued coverage at Elevations, finding that T.A. had not met the standard for residential treatment because he did not show symptoms of "suicidal or homicidal ideation," "self-harming behaviors," "serious physical aggression," or "out of control disruptive behavior which cannot be safely managed" at a lower level of care. *Id.* ¶ 27.

### 2. Denial of Coverage for Cherry Gulch Treatment

On April 26, 2016, eight days after T.A. was admitted to Cherry Gulch, BCBSNM sent Plaintiffs a letter denying payment for T.A.'s treatment at Cherry Gulch from that day forward. *Id.* ¶ 26. The letter stated that a BCBSNM reviewer had completed a medical necessity review and found that T.A. "did not meet MCG care guidelines for continued treatment" at a "mental health residential treatment level of care." *Id.* ¶ 29. The reviewer concluded that there were no reports that T.A. was "an imminent danger to [himself] or others," was "being aggressive or threatening," or was experiencing "psychosis or mania." *Id.* Accordingly, BCBSNM concluded that T.A. showed no signs of "medical instability" and could "be safely treated in a less restrictive setting," such as outpatient care. *Id.*

On October 14, 2016, Plaintiffs submitted a level one appeal of BCBSNM's denial of coverage at Cherry Gulch. *Id.* ¶ 30. Again, Plaintiffs contended that BCBSNM did not identify the version of the MCG or other criteria that BCBSNM used to deny benefits, nor did BCBSNM provide the names and qualifications of its reviewers and specific references to the medical records upon which the reviewers had relied. *Id.* ¶¶ 31–32. In their appeal, Plaintiffs included several letters from therapists and evaluators of T.A's condition. *Id.* ¶ 33. A May 11, 2016 letter from Cynthia Cohen stated in part that, in her professional judgment, T.A.'s condition would only improve if the family "took him out of the home to a residential treatment center with a 24 hour a day program focused intensely on assessment and treatment of adolescents with complicated, inscrutable, psychological issues." *Id.* A May 20, 2016 letter from Heather McCulloch stated in part that "[i]n

all [her] years of experience with [T.A.], he greatly needs to be in this intensive recommended 'residential therapeutic environment' so that he can heal, learn, and succeed in being his best self." *Id.* And Child and Adolescent Psychiatrist Dr. Brian Haigh wrote on June 2, 2016 that he "highly recommend that [T.A.] remain in intensive inpatient residential treatment" and that "any other course of action would most likely result in a devastating failure for [T.A.] that would not only be devastating to him emotionally, but require repeated costly admissions back to a higher level of care." *Id.*

On October 25, 2016, BCBSNM upheld its denial of benefits from T.A.'s treatment at Cherry Gulch. The reviewer observed that a residential treatment level of care was not justified because it found that T.A. "d[id] not have severe comorbid substance abuse," "life-threatening inability to receive care from caregivers," or "acute severe disability that requires acute stabilization." *Id.* ¶ 34.

## B. PROCEDURAL HISTORY

Plaintiffs' Amended Complaint alleges two causes of action. First, Plaintiffs seek monetary relief under Section 502(a)(1)(B) of ERISA for Defendants' alleged wrongful denial of benefits. Plaintiffs contend that Defendants violated the terms of the Plan in denying coverage for T.A.'s care at Elevations and Cherry Gulch because Defendants "failed to provide a 'full and fair review'" of Plaintiffs' claims for benefits and "failed to comply with their obligations . . . to act solely in T.A.'s interest" in making their coverage decisions. *Id.* ¶¶ 39–41. Second, Plaintiffs seek other equitable relief under Section 502(a)(3) of ERISA in the form of a declaration that Defendants violated the Parity Act, an injunction ordering Defendants to comply with the Parity Act, reformation of the Plan, disgorgement of wrongfully obtained funds, an order requiring an accounting of funds Plaintiffs allege that Defendants wrongfully withheld, a surcharge requiring Defendants to pay Plaintiffs make-whole relief for their loss, equitable estoppel, and restitution.

*Id.* ¶ 49. Plaintiffs contend that Defendants violated the Parity Act by treating their claims for mental health treatment coverage less favorably than it would treat claims for analogous surgical/medical care. *Id.* ¶¶ 43–48.

Defendants initially filed their Answers to Plaintiffs' Section 502(a)(1)(B) claim and moved to dismiss the Section 502(a)(3) cause of action for failure to state a claim on January 14, 2019. ECF Nos. 4, 5. Plaintiffs opposed the Defendants' first Motion to Dismiss and attached an amended complaint to their brief. ECF No. 25. Defendants then stipulated to Plaintiffs filing their Amended Complaint, which mooted the Defendants' first Motion to Dismiss. *See* ECF No. 27. Defendants filed this Motion to Dismiss the Plaintiffs' Amendment Complaint on April 11, 2019. ECF No. 29. Defendants argued that the claims on behalf of James A. in his individual capacity should be dismissed for lack of statutory standing under ERISA. *Id.* at 9. Defendants also argue that Plaintiffs' Section 502(a)(3) cause of action seeking to enforce the Parity Act should be dismissed because "Plaintiffs cannot maintain a claim for equitable relief under Section [502](a)(3) when they are already seeking monetary relief under Section [502](a)(1)(B) for the same injury." *Id.* at 6. Plaintiffs respond that James A. has standing in his individual capacity because he has certain legal and moral obligations to care for T.A. as his minor son. ECF No. 32 at 9. Plaintiffs also assert that their Section 502(a)(3) claims should not be dismissed because if the court accepts Defendants' categorical argument, Plaintiffs would be left "without an adequate avenue to pursue equitable remedies available to them under ERISA" for violations of the Parity Act. *Id.* at 8.

Having considered the parties' briefs and oral argument, the facts construed in favor of Plaintiffs as the nonmovants, and reviewing the applicable law, the court grants in part and denies in part the Defendants' Motion to Dismiss. All claims brought on behalf of James A. in his individual capacity are dismissed with prejudice because he lacks statutory standing to sue.

Plaintiffs' Section 502(a)(3) claim seeking to enforce the Parity Act is not dismissed because that cause of action is alternative to, rather than duplicative of, Plaintiffs' Section 502(a)(1)(B) denial of benefits claim, and the court cannot rule at the motion to dismiss stage whether the monetary relief that Plaintiffs request under Section 502(a)(1)(B) would be adequate to remedy Plaintiffs' alleged injuries if they were to prevail.

## II.   LEGAL STANDARD

Defendants move to dismiss Plaintiffs' complaint under FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Robbins v. Oklahoma ex rel. Dept. of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotation marks omitted). The allegations in the complaint must be "more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Id.* (quoting *Twombley*, 550 U.S. at 555). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563; *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) ("A plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss." (alteration and internal quotation marks omitted)).

In addition, "[f]ederal pleading rules have for a long time permitted the pursuit of alternative and inconsistent claims." *Boulware v. Baldwin*, 545 F. App'x 725, 729 (10th Cir. 2013) (citing *Campbell v. Barnett*, 351 F.2d 342, 344 (10th Cir. 1965), for proposition that Rule 8 "permits a plaintiff to plead alternate, hypothetical and inconsistent claims."). Rule 8 requires that "[a] pleading that states a claim for relief must contain . . . a demand for the relief sought, which

may include relief in the alternative or different types of relief." FED. R. CIV. P. 8(a)(3). Rule 8 also allows parties to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." FED. R. CIV. P. 8(d)(2). And Rule 18 states that "[a] party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party" and "may join two claims even though one of them is contingent on the disposition of the other . . . ." FED. R. CIV. P. 18.

### III.   ANALYSIS

#### A.   ERISA AND THE PARITY ACT

Congress enacted ERISA to "regulate employee pension and welfare benefits," and designed it "to promote the interests of employees and their beneficiaries." *Millsap v. McDonnell Douglas Corp.*, 368 F.3d 1246, 1249–50 (10th Cir. 2004) (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990)). ERISA is designed to strike the balance of "Congress' desire to offer employees enhanced protection for their benefits," with "its desire not to create a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefit plans in the first place." *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996).

Section 502(a), codified as 29 U.S.C. § 1132(a), is ERISA's civil enforcement scheme that "consists of several carefully integrated provisions." *Millsap*, 368 F.3d at 1250 (citation omitted). The remedial provisions relevant to this case are Section 502(a)(1)(B) and Section 502(a)(3).[2] Section 502(a)(1)(B) authorizes a plan "participant or beneficiary" to bring suit "to recover

---

[2] The Supreme Court refers to each section of ERISA by the named section in the statute (here, Section 502), rather than the section as codified in the U.S. Code. *See, e.g.*, *Varity*, 516 U.S. at 492. For consistency, this court refers to the monetary relief subsection of ERISA (codified at 29 U.S.C. § 1132(a)(1)(B)) as Section 502(a)(1)(B), and the equitable relief subsection of ERISA (codified at 29 U.S.C. § 1132(a)(3)) as Section 502(a)(3).

benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The Supreme Court instructed in *Firestone Tire & Rubbery Company v. Bruch* that a denial of benefits claim "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. 101, 115 (1989). Under *Firestone Tire*, if the plan vests such discretion with the plan administrator, a reviewing court will apply "a deferential standard of review." *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008) (citation and quotations omitted). The court "consider[s] only the rationale asserted by the plan administrator in the administrative record and determine[s] whether the decision, based on the asserted rationale, was arbitrary and capricious." *Spradley v. Owens-Illinois Hourly Employees Welfare Ben. Plan*, 686 F.3d 1135, 1140–41 (10th Cir. 2012) (citation omitted). The Tenth Circuit has ruled that the analysis for a denial of benefits claim where the plan gives discretion to a plan administrator "is limited to determining whether [the administrator's] interpretation was reasonable and made in good faith." *Hickman v. GEM Ins. Co.*, 299 F.3d 1208, 1213 (10th Cir. 2002) (citation omitted).

Section 502(a)(3), the other relevant ERISA enforcement provision, authorizes a plan "participant, beneficiary, or fiduciary" "(A) to enjoin any act or practice which violates any provision of [Title I of ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [Title I of ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3). As the Supreme Court has explained, Section 502(a)(3) "countenances only such relief as will enforce" ERISA's substantive provisions or the terms of the insured's plan, and it "authorizes the kinds of relief 'typically available in equity' in the days of 'the divided bench,' before law and equity merged." *US Airways, Inc. v. McCutchen*, 569 U.S. 88,

94–95 (2013) (quoting *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 256 (1993)). In short, ERISA's remedial provisions empower plan participants or beneficiaries to pursue two types of remedies: one for monetary relief seeking to "recover benefits due" under the terms of their insurance plan, and another "to obtain other appropriate equitable relief" for violations of the plan or other ERISA statutory rights. 29 U.S.C. §§ 1132(a)(1)(B) & (a)(3).

The Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act"), codified at 29 U.S.C. § 1185a, is an amendment to ERISA. Among other things, the Parity Act requires that insurance plans providing for "both medical and surgical benefits and mental health or substance use disorder benefits" must not impose more coverage restrictions on the latter than it imposes on the former. 29 U.S.C. § 1185a(a)(3)(A). This parity requirement takes two forms: (1) plan administrators may not apply treatment limitations to mental health benefits that are more restrictive than "the predominant treatment limitations applied to substantially all medical and surgical benefits" and (2) plan administrators may not apply "separate treatment limitations" only to mental health benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii). As this court recently stated, "[i]n effect, the Parity Act prevents insurance providers from writing or enforcing group health plans in a way that treats mental and medical health claims differently." *David S. v. United Healthcare Ins. Co.*, No. 2:18-CV-803, 2019 WL 4393341, at *3 (D. Utah Sept. 13, 2019) (citing *Munnelly v. Fordham Univ. Faculty*, 316 F. Supp. 3d 714, 728 (S.D.N.Y. 2018) ("Essentially, the Parity Act requires ERISA plans to treat sicknesses of the mind in the same way that they would a broken bone.")).

The Parity Act implementing regulations target and prohibit specific unequal "treatment limitations." *See* 29 U.S.C. §§ 1185a(a)(3)(A)(ii)–(B)(iii) (defining "treatment limitations"). Treatment limitations include "both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year), and nonquantitative treatment limitations,

which otherwise limit the scope or duration of benefits for treatment under a plan or coverage." 29 C.F.R. § 2590.712(a). Nonquantitative treatment limitations on mental health benefits include "[m]edical management standards limiting or excluding benefits based on medical necessity or medical appropriateness" and "[r]efusal to pay for higher-cost therapies until it can be shown that a lower-cost therapy is not effective (also known as fail-first policies or step therapy protocols)." 29 C.F.R. § 2590.712(c)(4)(ii). The Parity Act regulations further specify that all "processes, strategies, evidentiary standards, or other factors used in applying" non-quantitative treatment limitations are subject to the statute's parity requirements. 29 C.F.R. § 2590.712(c)(4)(i). Such factors are often not included in an insured's plan terms and are developed during the course of the insurer's coverage decisionmaking to determine whether a given treatment is covered in a specific case. Therefore, plaintiffs often must plead "as-applied" challenges to enforce their Parity Act rights when a disparity in benefits criteria does not exist on the face of the plan. *See, e.g.*, *Michael D. v. Anthem Health Plans of Kentucky, Inc.*, 369 F. Supp. 3d 1159, 1175 (D. Utah 2019) (permitting as-applied Parity Act challenge); *David S.*, 2019 WL 4393341, at *4 (same).

The combined effect of this statutory scheme for Plaintiffs is that they can seek one type of relief under Section 502(a)(1)(B) and another under Section 502(a)(3). Pursuant to Section 502(a)(1)(2), Plaintiffs can sue for money damages to recover benefits by enforcing their rights "under the terms of [their] plan." 29 U.S.C. § 1132(a)(1)(B). Pursuant to Section 502(a)(3), Plaintiffs can seek traditional equitable remedies for "any act or practice" that violates another substantive provision of ERISA not included in their benefits plan. *Id.* § 1132(a)(3). And because the Parity Act is a substantive provision of ERISA, this court has held that it must be enforced through Section 502(a)(3). *See Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1259 n.118

(D. Utah 2016) (noting that "Congress enacted the Parity Act as an amendment to ERISA, making it enforceable through a cause of action under 29 U.S.C. § 1132(a)(3)." (citation omitted)).

### B. PLEADING SIMULTANEOUS ERISA CLAIMS

Plaintiffs seek monetary damages to recover benefits due under the Plan pursuant to Section 502(a)(1)(B) and to enforce their rights under the Parity Act by seeking "other appropriate equitable relief" pursuant to Section 502(a)(3). Defendants argue that Plaintiffs' Parity Act claims "fail[] as a matter of law" because they contend that, in general, ERISA plaintiffs "cannot bring a claim for equitable relief under Section 1132(a)(3) when they are already bringing a claim for monetary relief under Section 1132(a)(1)(B)." ECF No. 29 at 2. According to Defendants, both of Plaintiffs' causes of action "arise from the same alleged misconduct and the same alleged injury: the denial of benefits for Plaintiffs' treatment at two residential treatment facilities . . . for lack of medical necessity." *Id*. And under what Defendants construe as "binding precedent," ERISA plaintiffs are prohibited from pleading what Defendants argue are "duplicative claims." *Id*. Accordingly, Defendants seek dismissal with prejudice of Plaintiffs' Parity Act claims under Section 502(a)(3). Plaintiffs respond that if pleading a facially plausible wrongful denial of benefits claim under Section 502(a)(1)(B) categorically bars them from also pursuing equitable claims under Section 502(a)(3), then they are functionally excluded from exercising their Parity Act rights. ECF No. 32 at 8–10.

The court holds that under the applicable legal framework concerning simultaneous ERISA causes of action, Section 502(a)(1)(B) and Section 502(a)(3) are not mutually exclusive. ERISA Plaintiffs are permitted to plead alternative and inconsistent theories of liability, and the court cannot determine at the motion to dismiss stage whether the relief available under Section 502(a)(1)(B) would completely remedy Plaintiffs' alleged injuries if they were to prevail.

Therefore, the court denies Defendants' Motion to Dismiss Plaintiffs' Section 502(a)(3) claims as a matter of law.

### 1. Legal Framework Concerning Simultaneous ERISA Claims

The parties do not cite, and this court has not found, any binding precedent that determines whether the court must grant a motion to dismiss against a plaintiff's claim for equitable relief under Section 502(a)(3) when she pleads a simultaneous claim for monetary relief under Section 502(a)(1)(B). Therefore, this case raises an issue of first impression that has not been decided by the Supreme Court or Tenth Circuit.

 In different contexts than those presented here, the Supreme Court has twice addressed the relationship between claims brought under Section 502(a)(1)(B) and Section 502(a)(3) in *Varity Corporation v. Howe*, 516 U.S. 489 (1996), and *CIGNA Corporation v. Amara*, 563 U.S. 421 (2011). In *Varity*, an employer and administrator of a self-funded employee pension benefits plan reorganized its corporate structure and, in the process, deceived its employees to voluntarily withdraw from the plan and forfeit their benefits. 516 U.S. at 491–94. The employees brought suit, but they were unable to recover benefits due under the plan pursuant to Section 502(a)(1)(B) because the plan had become defunct after the corporate reconfiguration. *Id.* at 494. Instead, the employees brought a breach of fiduciary duty claim to enforce their rights under a separate ERISA provision, Section 404(a), that imposes statutory fiduciary obligations on ERISA plan administrators. *Id.* at 494. After a trial, the district court held that the plan administrator had violated its fiduciary obligations and the court entered judgment against it. *Id.* at 495. As "appropriate equitable relief" under Section 502(a)(3), the district court reinstated the terms of the employees' prior pension benefits plan and enforced those terms. *Id.*

The Supreme Court reviewed this post-trial judgment and affirmed the district court's equitable remedy to reinstate the benefits plan because the Court determined that the plaintiffs

lacked an adequate remedy at law and "it is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy." *Id.* at 513. The Court generally described Section 502(a)(1)(B) as the remedy for the "wrongful denial of benefits and information," while Section 502(a)(3) was a "catchall" that provided "'appropriate equitable relief' for 'any' statutory violation." *Varity*, 516 U.S. at 512. The Court noted that this "structure suggests that" the ERISA "'catchall' provisions [including Section 502(a)(3)] act as a safety net, offering appropriate equitable relief for injuries caused by violations that Section 502 does not elsewhere adequately remedy." *Id.* The Court explained this distinction to allay the concern that "lawyers will complicate ordinary benefit claims by dressing them up in 'fiduciary duty' clothing" to pursue the same "repackage[d]" claim under Section 502(a)(3) instead of under Section 502(a)(1)(B). *Id.* at 514. The problem with repackaged claims, according to *Varity*, was that a plaintiff could avoid the *Firestone Tire* "arbitrary and capricious" review standard applied to denial of benefits claims that favors plan administrators, and instead avail herself of less deferential review under the "rigid level of conduct" expected of fiduciaries. *Id.* at 513–14. The Court reassured "that where Congress elsewhere provided *adequate relief* for a beneficiary's injury, there will *likely* be no need for further equitable relief, in which case such relief *normally* would not be 'appropriate.'" *Id.* at 515 (quoting 29 U.S.C. § 1132(a)(3)) (emphasis added).

The court further explained the proper interaction between ERISA remedies in *CIGNA Corporation v. Amara*, 563 U.S. 421 (2011). In that case, an employer significantly altered the terms of its employee pension plan without providing the employees adequate notice of the new terms as required by ERISA. 563 U.S. at 424–25. A class of employees sued to have the plan reformed to its previous terms and to enforce those terms. *Id.* Following a bench trial, the district court granted the requested relief under Section 502(a)(1)(B). *Id.* at 435. The Supreme Court

reversed, holding that although the employer had violated its notice obligations, Section 502(a)(1)(B) did not provide for the relief sought because that provision "speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them." *Id.* at 436 (quoting 29 U.S.C. § 1132(a)(1)(B)) (emphasis and alternations in original). Therefore, the employee class could not pursue its reformation remedy under Section 502(a)(1)(B). *Id.* at 438.

But the *Amara* Court ruled that the employee class could seek reformation under Section 502(a)(3) and remanded to the district court to examine this claim. *See id.* at 438–444. The Court first explained that the types of relief available under Section 502(a)(3) are those "traditionally considered equitable remedies," *id.* at 440, including reformation of contract, injunctions, estoppel, mandamus, and restitution, *see id.* at 439–442. The employee class could also pursue surcharge remedies, which (similar to unjust enrichment[3]) is a monetary award against a trustee or fiduciary that provides plaintiffs a "make-whole" remedy but "does not remove it from the category of traditionally equitable relief." *Id.* at 441–42. Accordingly, the Court determined that the employee class could seek to have the pension plan reformed, estopped, or could pursue a monetary award in the form of a "make-whole" surcharge under Section 502(a)(3). *Id.* at 440–443. Thus, the *Amara* Court permitted the employee class in the first instance to pursue claims under both Section 502(a)(1)(B) and Section 502(a)(3), and after ruling that Section 502(a)(1)(B) remedies were unavailable, permitted the lower court to determine whether reformation, estoppel, or surcharge were appropriate under Section 502(a)(3). *Id.* at 444–45. On remand, the district court granted the employee class the equitable relief of reformation and surcharge in the alternative, *Amara v.*

---

[3] The *Amara* Court defined surcharge as "monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." 563 U.S. at 441; *see also O'Dowd v. Anthem Health Plans, Inc*., No. 14-CV-02787-KLM, 2015 WL 5728814, at *4 (D. Colo. Sept. 30, 2015) (analyzing *Amara* and ruling that "a request for a surcharge is essentially an unjust enrichment claim.").

*CIGNA Corp.*, 925 F. Supp. 2d 242, 261 (D. Conn. 2012), and the Second Circuit affirmed, *see* 775 F.3d 510, 532 (2d Cir. 2014).

Read together, *Varity* and *Amara* demonstrate that the Supreme Court interprets ERISA as promoting a general *remedy* preference for awarding adequate monetary relief under Section 502(a)(1)(B) rather than equitable relief pursuant to Section 502(a)(3). In other words, these decisions make clear that if the circumstances of a case indicate that a Section 502(a)(1)(B) remedy is or would be adequate to address the plaintiff's alleged injury, the court need not address a remedy sought under Section 502(a)(3) for the same injury. But the cases themselves do not establish a categorical rule prohibiting Plaintiffs from pleading two different *causes of action* under Section 502(a)(1)(B) and Section 502(a)(3). Moreover, in both *Varity* and *Amara*, the courts were able to determine the adequacy of the potential ERISA remedies only after a trial in the district court.

Neither do cases from the Tenth Circuit resolve the issue of simultaneous ERISA causes of action. Indeed, the parties do not cite, and this court has not found, any Tenth Circuit authority interpreting the interaction between *Varity* and *Amara* as it relates to pleading parallel Section 502(a)(1)(B) and Section 502(a)(3) claims. *See Hancock v. Liberty Life Assurance Co. of Bos.*, No. CV 15-399 WPL/GBW, 2015 WL 12750281, at \*5 (D.N.M. Aug. 24, 2015) (observing that "[t]he Tenth Circuit has not ruled on the impact of *Amara* on the ability of an ERISA claimant to bring both [Section 502](a)(1) and (a)(3) claims"). Defendants do cite two unpublished[4] Tenth Circuit cases that apply *Varity* before *Amara*. First, in *Moore v. Berg Enterprises, Inc.*, the plaintiff sought

---

[4] Defendants argue that this court must apply the "binding . . . Tenth Circuit precedent" in *Lefler* and *Moore* to dismiss Plaintiffs' claims in Count II. ECF No. 29 at 2; *see also* ECF No. 35 at 3 (describing *Lefler* and *Moore* as "binding" precedent). But these cases are not binding. *See* TENTH CIR. R. 32.1(A) (stating that "[u]npublished decisions are not precedential, but may be cited for their persuasive value"). Thus, the court analyzes them only for their persuasive value and in the context of other persuasive authorities from other courts of appeal.

18

disability benefits under Section 502(a)(1)(B), as well as equitable relief under Section 502(a)(3) for breach of fiduciary duty and additional monetary relief under Section 502(c)(1) because of a plan administrator's alleged failure to comply with a request for information. 201 F.3d 448, 1999 WL 1063823, at *2 (10th Cir. 1999) (unpublished). The Tenth Circuit affirmed the grant of summary judgment on the plaintiff's Section 502(a)(1)(B) and Section 502(c)(1) claims because they were time-barred. *Id*. In a footnote, the court also stated that because "the undisputed circumstances of this case" showed that Section 502(a)(1)(B) provided adequate relief to plaintiff, he was not entitled to "repackage his . . . 'denial of benefits' claim as a claim for 'breach of fiduciary duty[ ]' and seek relief under section [502](a)(3)." *Id.* at *2 n.2 (quoting *Varity*, 516 U.S. at 513).

Second, in *Lefler v. United Healthcare of Utah, Inc.*, class-plaintiffs sought to recover benefits due under Section 502(a)(1)(B) and pursued a "breach of fiduciary duty" claim seeking other equitable relief under Section 502(a)(3). 72 F. App'x 818, 819 (10th Cir. 2003) (unpublished). Specifically, the class alleged that the plan administrator breached its fiduciary duty by "failing to inform the class of [the] discounting practice" it used to calculate benefit payments, "improperly denying, de facto, benefits under the plan," and failing to follow a Utah law that required insurers to supply "detailed payment notification to an insured." *Id.* at 826. To remedy the breach of fiduciary duty, the class "sought, under [Section 502(a)(3)] to impose a constructive trust for monies it contends were improperly held" by the plan administrator. *Id.* at 822.

The Tenth Circuit affirmed the district court's grant of summary judgment on both claims. *Id.* at 819. Regarding the Section 502(a)(1)(B) claim, the court provided a lengthy discussion of the insurance plan and the insurer's discounting pricing practice, and concluded that no benefits were wrongfully denied because the insurer's practice was based on a reasonable interpretation of

the insurance plan. *See id.* at 824–25. The Tenth Circuit then provided essentially a postscript, two-paragraph analysis of the class's Section 502(a)(3) claim. *See id.* at 826. First, the court observed that the class's arguments underlying its breach of fiduciary duty claim could have also been brought as part of its benefit recovery claim, for which the court had already indicated that Section 502(a)(1)(B) would provide the class with an adequate remedy if they had prevailed on the merits. *See id.* at 825. The court observed, for example, that arguments regarding the plan administrator's alleged violation of Utah law could have been presented "to the district court on the Class's benefits recovery claim," but the class had failed to do so. *Id.* (alterations omitted). The court then relied on *Varity* to conclude that the "consideration of a claim under Section [502](a)(3) claim is improper when the [plaintiff] . . . states a cognizable claim under Section [502](a)(1)(B)." *Id.* at 826.

Notably for present purposes, *Lefler* was decided before the Supreme Court's decision in *Amara* and on a motion for summary judgment after the parties conducted discovery. Additionally, the Tenth Circuit rejected the class's Section 502(a)(3) claims only after the court had already determined that the class's Section 502(a)(3) arguments could have been pursued under its Section 502(a)(1)(B) denial of benefits claim, which would have provided an adequate remedy for the alleged injury. Indeed, the categorical rule that Defendants draw from *Lefler* does not account for a subsequent and published Tenth Circuit opinion, in which the court affirmed a district court's summary judgment decision to simultaneously award benefits under Section 502(a)(1)(B) and equitable relief in the form of prejudgment interest under Section 502(a)(3). *See Weber*, 541 F.3d at 1016. It is therefore understandable that district courts within the Tenth Circuit are conflicted about the meaning and import of *Lefler* and *Moore* on the ability of plaintiffs to plead simultaneous ERISA claims. *See, e.g.*, *Smith v. Liberty Life Assurance Co. of Bos.*, No. 17-CV-01794-PAB-

GPG, 2018 WL 4635983, at *3 (D. Colo. Sept. 27, 2018) (observing that "[a]lthough *Lefler* does not mandate the dismissal of parallel [Section 502](a)(3) claims at the pleadings stage, district courts in this Circuit have relied on *Varity* and *Lefler* to dismiss [Section 502](a)(3) claims that are duplicative of denial-of-benefits claims under [Section 502](a)(1)(B)." (citations omitted)). Some decisions have interpreted *Lefler* and *Varity* to categorically prohibit pleading simultaneous monetary and equitable ERISA claims.[5] But other district courts have ruled that the Tenth Circuit has not determined whether plaintiffs may plead simultaneous Section 502(a)(1)(B) and Section 502(a)(3) claims, and have denied motions to dismiss on this basis.[6]

Additionally, other circuit courts are split on the proper interpretation of *Varity* and *Amara*. Before *Amara*, the Fourth, Fifth, and Eleventh Circuits held that *Varity* prohibited plaintiffs from

---

[5] *See, e.g.*, *K.H.B. v. UnitedHealthcare Ins. Co.*, No. 2.18-CV-000795-DN, 2019 WL 4736801, at *4 (D. Utah Sept. 27, 2019); *E.M. v. Humana*, No. 2:18-CV-00789-CMR, 2019 WL 4696281, at *5 (D. Utah Sept. 26, 2019); *IHC Health Servs., Inc. v. Tyco Integrated Sec., LLC*, No. 2:17-CV-00747-DN, 2018 WL 3429932, at *4 (D. Utah July 16, 2018).

[6] *See, e.g.*, *Kurt W. v. United Healthcare Ins. Co.*, No. 2:19-CV-223, 2019 WL 6790823, at *7 (D. Utah Dec. 12, 2019) (declining to bar simultaneous wrongful denial of benefits and Parity Act claims because the claims "are distinct in terms of the nature of the alleged harm, the theory of liability, the ERISA enforcement mechanism, and the relief sought." (quoting *Michael W. v. United Behavioral Health*, No. 2:18-CV-00818-JNP, 2019 WL 4736937, at *12 n.9 (D. Utah Sept. 27, 2019)); *Smith*, 2018 WL 4635983, at *3 (recognizing that "*Varity* does not bar the pleading of parallel claims" that "rest on a single injury" where theories of relief are different); *Williams v. FedEx Corp. Servs.*, No. 2:13-CV-37-TS, 2015 WL 248570, at *4 (D. Utah Jan. 20, 2015) (observing that "a plaintiff could bring both a § [502](a)(1)(B) claim and a § [502](a)(3) claim if the claims were directed toward remedying two different injuries, even if the two claims sought the same remedy in order to ensure [the plaintiff] could be made whole." (internal citations and quotations omitted)); *O'Dowd*, 2015 WL 5728814, at *4 (declining to rule that the plaintiff's dual ERISA claims "seek the same relief for the same injury despite the fact that they are based on the same alleged actions" because "Plaintiff's second claim seeks equitable relief in the form of recovery of amounts Defendant may have improperly gained from the alleged breach of fiduciary duty, while Plaintiff's third claim seeks payment of benefits"); *Galutza v. Hartford Life & Acc. Ins. Co.*, No. 05-CV-58-GKF-PJC, 2008 WL 2433837, at *2 (N.D. Okla. June 12, 2008) (adopting a "middle ground" in which the plaintiff "ought to be permitted to join the two claims until such time as it may be determined whether § 1132(a)(1)(B) affords him adequate relief.").

pleading simultaneous claims under Section 502(a)(1)(B) and Section 502(a)(3).[7] The First and Seventh Circuits similarly ruled that such a bar may be imposed at summary judgment.[8] And a divided *en banc* panel of the Sixth Circuit interpreted both *Varity* and *Amara* to hold that a plaintiff may not seek "a duplicative or redundant remedy . . . to redress the same injury" when she has an adequate wrongful denial of benefits claim under Section 502(a)(1)(B). *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 371 (6th Cir. 2015) (en banc).[9]

---

[7] *See Korotynska v. Metropolitan Life Ins. Co.*, 474 F.3d 101, 108 (4th Cir. 2006) (on a motion for judgment on the pleadings, recognizing the circuit split and holding that "*Varity* allows equitable relief when the available remedy is inadequate, not when the legal framework for obtaining that remedy is, to the plaintiff's mind, undesirable."); *Tolson v. Avondale Industries, Inc.*, 141 F.3d 604, 610 (5th Cir. 1998) (finding that if a plaintiff whose injury consists of a denial of benefits "has adequate relief available for the alleged improper denial of benefits through his right to sue [the benefit plan] directly under section [502](a)(1)," then "relief through the application of Section [502](a)(3) would be inappropriate."); *Katz v. Comprehensive Plan of Grp. Ins.*, 197 F.3d 1084, 1088–1089 (11th Cir. 1999) (affirming dismissal of a Section 502(a)(3) breach-of-fiduciary-duty claim because the injury was remediable under Section 502(a)(1)(B), even though that claim was rejected on the merits, because "the availability of an adequate remedy under the law for *Varity* purposes, does not mean, nor does it guarantee, an adjudication in one's favor").

[8] *See Rocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002) (ruling at summary judgment that "if a plaintiff can pursue benefits under the plan pursuant to Section a(1), there is an adequate remedy under the plan which bars a further remedy under Section a(3)."); *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 805 (7th Cir. 2009) (on a motion for summary judgment, finding that "a majority of the circuits are of the view that if relief is available to a plan participant under subsection (a)(1)(B), then that relief is *un*available under subsection (a)(3)," and that the plaintiff "has given [the court] no reason to depart from the holdings of those circuits." (emphasis in original)).

[9] However, Judge Stranch's persuasive dissent for seven judges also notes that the *Rochow* majority did not resolve an apparent internal tension in the Sixth Circuit regarding the mutual exclusivity of Section 502(a)(1)(B) and Section 502(a)(3). 780 F.3d at 387–88 (Stranch, J., dissenting). For example, in *Wilkins v. Baptist Healthcare*, the Sixth Circuit held that when Section "[502](a)(1)(B) provides a remedy for [a beneficiary's] alleged injury that allows him to bring a lawsuit to challenge the Plan Administrator's denial of benefits to which he believes he is entitled, he does not have a right to a cause of action for breach of fiduciary duty pursuant to § [502](a)(3)." 150 F.3d 609, 615 (6th Cir. 1998). But later in *Gore v. El Paso Energy Corporation Long Term Disability Plan*, the Sixth Circuit permitted simultaneous ERISA claims after finding the plaintiff suffered distinct injuries. 477 F.3d 833, 841 (6th Cir. 2007).

More recently (and while interpreting both *Varity* and *Amara*), other circuit courts have held that Section 502(a)(1)(B) and Section 502(a)(3) are not mutually exclusive. The Second, Eighth, and Ninth Circuits have all permitted plaintiffs to pursue simultaneous claims past the motion to dismiss stage. *See New York State Psychiatric Assoc., Inc. v. UnitedHealth Group*, 798 F.3d 125, 134–35 (2d Cir. 2015) ("*NYSPA*"); *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 726–27 (8th Cir. 2014); *Moyle v. Liberty Mut. Ret. Ben. Plan*, 823 F.3d 948, 960–61 (9th Cir. 2016). In each case, the courts understood the lesson from *Varity* and *Amara* to be that ERISA plaintiffs may not obtain duplicate *recovery* under Section 502(a)(1)(B) and Section 502(a)(3), but can press simultaneous *causes of action*. *See NYPSA*, 798 F.3d at 134; *Silva*, 762 F.3d at 726; *Moyle*, 823 F.3d at 961. Additionally, each court held that the motion to dismiss stage of the proceedings was too early to determine whether the plaintiff's Section 502(a)(1)(B) remedy was "adequate" under the language of *Varity* to justify barring her Section 502(a)(3) claim before discovery. *See NYPSA*, 798 F.3d at 134; *Silva*, 762 F.3d at 727; *Moyle*, 823 F.3d at 961. As a result, district courts outside the Tenth Circuit are similarly divided concerning the effect of *Varity* on pleading dual ERISA claims.[10]

In sum, the case law on this subject is murky and inconclusive. The Supreme Court has not addressed whether a plaintiff may simultaneously plead claims under Section 502(a)(1)(B) and Section 502(a)(3) and proceed past a motion to dismiss to determine whether her claims are

---

[10] *Compare A.F. v. Providence Health Plan*, 157 F. Supp. 3d 899, 920 (D. Or. 2016) (permitting simultaneous ERISA claims to survive a motion to dismiss); *Soland v. George Washington Univ.*, 916 F. Supp. 2d 33, 39 (D.D.C. 2013) (same); *England v. Marriott Int'l, Inc.*, 764 F. Supp. 2d 761, 779 (D. Md. 2011) (same); *Dennis H. v. California Physicians' Serv.*, No. C 18-06708 WHA, 2019 WL 1301757, at *3 (N.D. Cal. Mar. 21, 2019), *with W.P. v. Anthem Ins. Companies Inc.*, No. 115CV00562TWPTAB, 2017 WL 605079, at *6 (S.D. Ind. Feb. 15, 2017) (barring simultaneous ERISA claims at the motion to dismiss stage); *Hollingshead v. Aetna Health Inc.*, No. 4:13-CV-231, 2014 WL 585397, at *7 (S.D. Tex. Feb. 13, 2014) (same), *aff'd*, 589 F. App'x 732 (5th Cir. 2014).

"repackage[d]" or if her Section 502(a)(1)(B) remedy is "adequate." The circuit courts are in conflict regarding the proper application of the reasoning stated in *Varity* and *Amara* to determine whether causes of action under Section 502(a)(1)(B) and Section 502(a)(3) are mutually exclusive. And the Tenth Circuit has yet to issue binding precedent concerning simultaneous ERISA claims or whether a plaintiff may proceed past a motion to dismiss to flesh out her arguments. As a consequence, district courts in and out of the Tenth Circuit are conflicted regarding the existence of a categorical rule barring plaintiffs from pursuing causes of action under both Section 502(a)(1)(B) and Section 502(a)(3). Accordingly, the court discusses the persuasive authority from sister circuits and other district courts as those decisions apply *Varity*, *Amara*, and *Lefler* to the issue of pleading simultaneous ERISA claims. The court finds that the proper interpretation of those cases does not support a categorical rule to dismiss Section 502(a)(3) claims if the plaintiff also pleads a plausible Section 502(a)(1)(B) claim. Indeed, it would be premature at the motion to dismiss stage in almost every case to decide the two core issues discussed in *Varity*: whether the claims are duplicative and whether the Section 502(a)(1)(B) claim can adequately remedy the plaintiff's injury or injuries. The court therefore rejects the categorical dismissal of Plaintiffs' Section 502(a)(3) claim.

### 2. Reasons to Allow Pleading Simultaneous ERISA Claims

The court understands the core lesson of *Varity* and *Amara* to be that if the plaintiff may obtain an adequate, make-whole remedy for her injury by pursuing a claim for monetary relief under Section 502(a)(1)(B), she may not also seek additional equitable relief under Section 502(a)(3) for the same injury. Rather than establishing a categorical bar, this rule prompts two antecedent and related questions: (1) Has the plaintiff alleged alternative theories of liability or suffered distinct injuries to justify pursuing simultaneous causes of action under both Section 502(a)(1)(B) and Section 502(a)(3)? (2) Do the monetary damages available for causes of action

24

under Section 502(a)(1)(B) provide "adequate relief" such that the prevailing plaintiff can be made whole and completely remedy her injury or injuries without resorting to equitable relief? In other words, the proper inquiry is whether the plaintiff's simultaneous ERISA claims are actually duplicative, meaning they seek to remedy the same injury with "repackaged" causes of action. If they are duplicative, *Varity* dictates that the plaintiff must pursue her claims under Section 502(a)(1)(B). The court must also determine if the plaintiff's injury or injuries are adequately remedied by her Section 502(a)(1)(B) cause of action. If the plaintiff's injury or injuries are adequately remedied by an award of money damages under Section 502(a)(1)(B), then she may not also recover equitable relief under Section 502(a)(3). Whether these questions may be answered at a motion for summary judgment is not an issue before this court. But due to the nature of the analyses discussed below, the court rejects a categorical rule requiring dismissal of parallel claims under Section 502(a)(1)(B) and Section 502(a)(3) based solely on the pleadings.

### i)        Duplicate or Repackaged Claims

As stated above, *Varity* and its progeny prohibit "repackag[ing]" simultaneous claims under Section 502(a)(1)(B) and Section 502(a)(3) to avoid having "lawyers . . . complicate ordinary benefit claims by dressing them up in 'fiduciary duty' clothing." *Varity*, 516 U.S. at 514. The *Varity* Court was concerned that if a plaintiff could repackage a denial of benefits claim as a breach of fiduciary duty claim, she could avoid the deferential "arbitrary and capricious" standard of review applied to denial of benefits claims under *Firestone Tire* that favors plan administrators, and instead avail herself to the "rigid level of conduct" expected of fiduciaries. *Id*. at 513–14. Thus, the proper analysis for permitting simultaneous ERISA claims under the reasoning of *Varity* first asks whether plaintiff's Section 502(a)(3) claims merely "repackage"—or stated differently, are duplicative of—her claims under Section 502(a)(1)(B).

Some courts have undertaken this analysis by distinguishing between "alternative—rather than duplicative—theories of liability." *Moyle*, 823 F.3d at 961; *see also Silva*, 762 F.3d at 726–27 (concluding that "*Varity* only bars duplicate recovery and does not address pleading alternate theories of liability"). Other courts have asked whether the nature of the injury is distinct such that the plaintiff's two causes of action seek to remedy two separate injuries. *See, e.g.*, *Williams*, 2015 WL 248570, at *4 (permitting simultaneous claims "if the claims were directed toward remedying two different injuries" (citation omitted)); *Faltermeier v. Aetna Life Insurance Company*, No. 15-CV-2255-JAR-TJJ, 2015 WL 3440479, at *2–3 (D. Kan. May 28, 2015) (same); *see also Rochow*, 780 F.3d at 372 (the en banc Sixth Circuit held that for a plaintiff to recover under both Section 502(a)(1)(B) and Section 502(a)(3), she must suffer an "*injury* separate and distinct from the denial of benefits or where the remedy afforded by Congress under [Section 502(a)(1)(B)] is otherwise shown to be inadequate." (emphasis in original)). Here, Plaintiffs' ERISA claims are not duplicative under either formulation of this inquiry. Plaintiffs pursue alternative causes of action that are not merely a repackaging of each other, and they seek to remedy two distinct injuries to their rights under ERISA.

### a)   *Distinguishing Alternative from Duplicative Claims*

Plaintiffs' causes of action under Section 502(a)(1)(B) and Section 502(a)(3) present alternative theories of liability. Defendants concede that Plaintiffs' Parity Act claim presents a different legal theory than her denial of benefits claim, but argue that this "is not a relevant consideration" because it contends that the *Varity* Court's preference for Section 502(a)(2)(1) relief "turn[s] on the availability of an adequate remedy, not the nature of the underlying claim." ECF No. 35 at 2. The court rejects this argument because it is inconsistent with federal pleading rules, persuasive authority from other circuits, and the proper interpretation of *Varity*.

In general, the Federal Rules of Civil Procedure offer a generous framework for plaintiffs to plead alternative causes of action. Rule 8 requires that "[a] pleading that states a claim for relief must contain . . . a demand for the relief sought, *which may include relief in the alternative or different types of relief.*" FED. R. CIV. P. 8(a)(3) (emphasis added). Rule 8 also allows parties to "set out 2 or more statements of a claim or defense *alternatively or hypothetically*, either in a single count or defense or in separate ones." FED. R. CIV. P. 8(d)(2) (emphasis added). Additionally, Rule 18 states that "[a] party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party" and "may join two claims even though one of them is contingent on the disposition of the other . . . ." FED. R. CIV. P. 18.

ERISA plaintiffs are subjected to these same rules. As the Eighth Circuit summarized:

> [N]othing in *Varity Corp.* overrules federal pleading rules. And, under such rules, a plaintiff may plead claims hypothetically or alternatively. To dismiss an ERISA plaintiff's [Section 502](a)(3) claim as duplicative at the pleading stage of a case would, in effect, require the plaintiff to elect a legal theory and would, therefore, violate the Federal Rules of Civil Procedure.

*Silva*, 762 F.3d at 726 (internal quotations and alterations omitted). Accordingly, "*Varity* does not limit the number of ways a party can initially seek relief at the motion to dismiss stage." *Id.*; *see also Moyle*, 823 F.3d at 962 (finding that permitting simultaneous ERISA claims "not only comports with *Amara* and *Varity*, it also adheres to the Federal Rules of Civil Procedure"); *Smith*, 2018 WL 4635983, at *3 (recognizing that "*Varity* does not bar the pleading of parallel claims" that "rest on a single injury" where theories of relief are different). Therefore, *Varity* does not prohibit pleading simultaneous claims pursuing alternative theories of liability.

But *Varity* does bar plaintiffs from maintaining the same claims under both Section 502(a)(1)(B) and Section 502(a)(3) as a way to avoid the more deferential review standard applied to wrongful denial of benefits causes of action under Section 502(a)(1)(B). 516 U.S. at 513–14.

For example, the class-plaintiffs in *Lefler* pled a breach of fiduciary duty claim under Section 502(a)(3) that relies on the same arguments she raised or could have raised under the class's Section 502(a)(1)(B) denial of benefits cause of action. *See* 72 F. App'x at 825–26. Specifically, the class alleged that the plan administrator breached its fiduciary duty by "failing to inform the class of [the] discounting practice" it used to calculate benefit payments, "improperly denying, de facto, benefits under the plan," and failing to follow a Utah law that required insurers to supply "detailed payment notification to an insured." *Id.* at 826.[11] The Tenth Circuit found that all of these arguments could also form the basis of the class's Section 502(a)(1)(B) claims. *See id.* at 825. Because of this finding, the court barred the class's breach of fiduciary duty cause of action because it was duplicative of claims available under its Section 501(a)(1)(B) denial of benefit cause of action. *Id.* at 826. *Varity* prohibits such duplication of claims to avoid having plaintiffs "complicate ordinary benefit claims by dressing them up in 'fiduciary duty' clothing." 516 U.S. at 514.

The duplicative claims issue in *Lefler* is not present here because Plaintiffs can only bring their Parity Act cause of action under Section 502(a)(3) and those claims cannot be "repackage[d]" from similar claims available under a Section 502(a)(1)(B) cause of action. Section 502(a)(1)(B)

---

[11] Defendants' assertion that the *Lefler* plaintiffs' "(a)(3) claim is based on an alleged separate Utah statutory violation" is a misreading of that case. *See* ECF 35 at 3. Rather, a subsequent Tenth Circuit decision analyzing *Lefler* recognizes that the plaintiffs' Section 502(a)(3) was "for breach of fiduciary duty," not as a mechanism for enforcing a separate statutory right under Utah law or otherwise. *Admin. Comm. Of Wal-Mart Assocs. Health And Welfare Plan v. Willard*, 393 F.3d 1119, 1122 (10th Cir. 2004). The Tenth Circuit clarified that the *Lefler* plaintiffs' "allegations under Utah insurance law and other ERISA provisions implicated defendant's fiduciary responsibilities." *Id.* at 1123. In other words, the *Lefler* plaintiffs brought a breach of fiduciary duty claim under Section 502(a)(3) and used the Utah insurance law as an argument for imposing a certain fiduciary obligation on the plan administrator. *See* 72 F. App'x at 825–26. Here, by contrast, Plaintiffs' Section 502(a)(3) claim seeks to enforce her Parity Act rights directly as part of ERISA, and not as an element of a fiduciary duty claim. Thus, the respective Section 502(a)(3) claims seek to enforce entirely different rights and theories of relief.

permits plaintiffs to only "recover benefits due . . . under the terms of [his or her] *plan*," 29 U.S.C. § 1132(a)(1)(B) (emphasis added), and the Supreme Court has "found nothing suggesting that the provision authorizes a court to alter those terms" or to enforce other statutory rights, *Amara*, 563 U.S. at 436–37. By contrast, *Varity* recognized that Section 502(a)(3) is the "catchall" provision that "acts as a safety net" to provide "'appropriate equitable relief' for 'any' *statutory violation*" of ERISA that Section 502(a) "does not elsewhere adequately remedy." 516 U.S. at 512 (quoting 29 U.S.C. § 1132(a)(3)) (emphasis added); *see also Moyle*, 823 F.3d at 961 (stating that "a key holding in *Varity* was that § [502](a)(3) extends to other sections of the statute, even when § [502] does not expressly provide a remedy for those sections"). Pertinent here, ERISA plan participants and beneficiaries have statutory rights under the Parity Act to have insurers treat mental health and medical coverage decisions equally. *See* 29 U.S.C. § 1185a.[12] As a separate substantive provision of ERISA, Plaintiffs may enforce their Parity Act rights only through Section 502(a)(3) and have no ability to duplicate these claims under a Section 502(a)(1)(B) cause of action. *See Joseph F*., 158 F. Supp. 3d at 1259 n.118 (citing *A.F*., 35 F. Supp. 3d at 1304); *NYSPA*, 798 F.3d at 133 (agreeing that the "Parity Act obligation is imposed on [a plan administrator] not by the Parity Act itself, but rather by § 502(a)(3)"). Unlike the concern expressed in *Varity* or the basis for the *Lefler* court's rejection of the Section 502(a)(3) claim presented in that case, Plaintiffs cannot be said to have "repackage[d]" or "dress[ed] . . . up" their Parity Act claims to avoid the strictures of Section 502(a)(1)(B) "arbitrary and capricious" review because it is impossible to enforce the Parity Act

---

[12] The court notes that the ability to enforce other ERISA statutory rights through Section 502(a)(3) also includes a breach of fiduciary duty, which is a statutory ERISA right that requires fiduciaries to administer plans "solely in the interest of the [plan's] participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Plaintiffs here have not pursued a separate breach of fiduciary duty claim under Section 502(a)(3). But nothing in this decision casts doubt on a plaintiff's ability to plead simultaneous wrongful denial of benefits and breach of fiduciary duty causes of action where the two claims are not duplicative. *Cf. Lefler*, 72 F. App'x at 825–26.

under Section 502(a)(1)(B). Therefore, Plaintiffs' Parity Act claim is not barred by the reasoning in *Varity* because it is alternative to, rather than duplicative of, their denial of benefits claim.

### b)    *Remedying Distinct Injuries*

Second, other courts have focused on whether the plaintiff alleged that his or her ERISA claims seek to remedy distinct injuries. Under the court's understanding of the rule established in *Varity* and *Amara*, Plaintiffs may pursue a Section 502(a)(3) claim where that claim "is based on an injury separate and distinct from the denial of benefits." *Rochow*, 780 F.3d at 372 (citing *Gore*, 477 F.3d at 840–42); *see also id.* at 384 (Stranch, J., dissenting) (articulating the rule that "where two distinct injuries exist . . . two remedies are necessary to make the plan participant or beneficiary whole."); *A.F.*, 157 F. Supp. 3d at 920 (permitting dual ERISA claims where the claims "do not seek the same relief for the same injury, although they are based on the same alleged actions." (internal citations and quotations omitted)). Plaintiffs further demonstrate that their simultaneous ERISA claims are not duplicative by alleging that the two causes of action seek to remedy two separate injuries: (1) the wrongful denial of benefits based on the terms of the Plan that resulted in over $243,000 of medical expenses, and (2) the present and future injury precipitated by the Defendants' failure to administer the Plan in compliance with the Parity Act, upon which the Plaintiffs seek to "redress [their] loss flowing from" the Defendants' failure and "prevent [Defendants'] unjust enrichment" and future violations. *See NYPSA*, 798 F.3d at 135. Therefore, Plaintiffs may pursue simultaneous Section 502(a)(1)(B) and Section 502(a)(3) causes of action because each seeks to remedy a different injury.

The Ninth Circuit's analysis in *Moyle v. Liberty Mutual Retirement Benefit Plan* is instructive on this issue. In that case, the plaintiffs sought to recover wrongfully withheld benefits under Section 502(a)(1)(B), as well as equitable relief under Section 502(a)(3) in the form of

surcharge (i.e., unjust enrichment) and reformation of their benefits plan to remedy the defendant's alleged breach of fiduciary duty because of a "material lack of disclosure about the terms of a pension plan." 923 F.3d at 952, 960. The *Moyle* court ruled that the claims were not duplicative and allowed both to proceed. *Id.* at 961. The court recognized that the plaintiffs sought "the payment of benefits under [Section 502](a)(1)(B), but if that fails, [the plaintiffs sought] an equitable remedy for the breach of fiduciary duty to disclose under [Section 502](a)(3)." *Id.* at 962. Thus, the Ninth Circuit ruled that the plaintiffs could plead parallel ERISA claims seeking to remedy two distinct injuries—the wrongful denial of benefits and the failure to disclose material terms of the plan—and were merely prohibited from obtaining "double recovery" under the *Varity* framework. *Id.* at 961.

Likewise, the Sixth Circuit in *Gore v. El Paso Energy Corporation Long Term Disability Plan* permitted simultaneous ERISA claims after finding the plaintiff suffered distinct injuries. *See* 477 F.3d at 841. There, the plaintiff sought monetary relief for wrongful denial of benefits under Section 502(a)(1)(B) and additional equitable relief for breach of fiduciary duty under Section 502(a)(3). *Id.* at 836. The Sixth Circuit reversed summary judgment on the Section 502(a)(3) claim because the plaintiff had "alleged two separate and distinct injuries" to justify maintaining simultaneous ERISA causes of action. *Id.* at 840. First, the plaintiff alleged under Section 502(a)(1)(B) that the plan administrator had wrongfully denied him benefits based on the terms of his plan. *Id.* Second, the plaintiff alleged that the plan administrator had "breached its fiduciary duty by" misrepresenting his eligibility for benefits and making him "believe that he had two years of [eligible] benefits" when in reality he only had one year. *Id.* at 841. The court found that the plan administrator committed two distinct injuries—the wrongful denial of benefits and the misrepresentation that resulted in the plaintiff's misconception of his eligibility for benefits—and

the plaintiff could pursue simultaneous causes of action to remedy both. *See id.* at 840–41. The court added that "[t]he fact that [the plaintiff's] claim for an equitable remedy could have been resolved if his [Section 502](a)(1)(B) claim was resolved in his favor does not mean that his claim is . . . barred." *Id.* at 841 (internal citations and quotations omitted).

A district court in the Tenth Circuit has also permitted simultaneous ERISA claims seeking to remedy distinct injuries in *Faltermeier v. Aetna Life Insurance Company. See* 2015 WL 3440479, at *2–3. In *Faltermeier*, the district court found that the plaintiff had alleged two separate injuries: one for a wrongful denial of benefits based on the insurer's alleged arbitrary and capricious review of materials in the administrative record for his benefits claim and "a separate cause of action for breach of fiduciary duty arising out of Defendant's exclusion of relevant medical evidence from the administrative record." *Id.* Because the exclusion of medical evidence was not part of the plaintiff's plan, he had to "seek another avenue to get [that] evidence" of wrongdoing "before the court." *Id.* at *2. Accordingly, the court ruled that the plaintiff had not "merely restated the same factual basis" for his two causes of action, and "[a]s in *Varity*, Plaintiff is entitled to assert a claim under Section 502(a)(3) because he may have no benefits due him under the terms of the plan." *Id.* at *2–3. The district court concluded that "[a]t this early stage of the proceedings, the Court finds that Plaintiff should be permitted to assert both claims." *Id.* at *3.

The circumstances of this case counsel in favor of the same result as *Moyle*, *Gore*, and *Faltermeier*. Here, Plaintiffs first contend that, under Section 502(a)(1)(B), Defendants violated the face of the Plan by denying benefits for T.A.'s treatment at Elevations and Cherry Gulch because Defendants "failed to provide a 'full and fair review'" of Plaintiffs' claims for benefits and "failed to comply with their obligations . . . to act solely in T.A.'s interest" in making their coverage decisions. Am. Compl. ¶¶ 39–41. In addition, Plaintiffs argue that Defendants violated

the Parity Act, enforced through Section 502(a)(3), by applying more stringent standards to their coverage determinations for mental health treatment as compared to analogous surgical/medical care. *Id.* ¶ 49. Specifically, Plaintiffs plausibly allege that Defendants used acute-level criteria to evaluate the subacute level of care provided to T.A. at Elevations and Cherry Gulch, but Defendants would have applied subacute-level criteria for coverage if T.A. had received subacute level of care in a surgical/medical context. *Id.* ¶ 46–47. This second injury is distinct from the alleged wrongful denial of benefits because Plaintiffs contend they were also deprived of their statutory entitlement to an insurance plan that complies with the Parity Act, even if a compliant plan would nonetheless still result in a denial of benefits for T.A.'s treatment at Elevations and Cherry Gulch. Accordingly, Plaintiffs' Section 502(a)(3) claim seeks to rectify past injury and prevent future recurrence by obtaining, among other relief, an injunction, surcharge, and disgorgement remedies related to the Defendants' financial benefit obtained from violating the Parity Act. *See also NYPSA*, 798 F.3d at 135 (describing the Parity Act injury in both past and prospective terms).

In short, Plaintiffs' alternative Section 502(a)(1)(B) and Section 502(a)(3) causes of action also seek to rectify two independent injuries—the wrongful denial of benefits in this instance and being subjected to a Plan that fails to comply with their statutory Parity Act rights—and providing a remedy for one does not resolve the other. Therefore, Plaintiffs' "two remedies are not duplicative and neither repackages the other. Both remedies are necessary, working in tandem, to make [Plaintiffs] whole for [the Defendants' alleged] ERISA violations" in this case. *See Rochow*, 780 F.3d at 383–84 (Stranch, J., dissenting).

ii)        **Adequate Remedy at Law**

Next, the court reads *Varity* to bar duplicate *recoveries* under Section 502(a)(1)(B) and Section 502(a)(3) where the monetary relief available under Section 502(a)(1)(B) is adequate to provide a make-whole remedy for the plaintiff. As stated in *Varity*, "where Congress elsewhere provided *adequate relief* for a beneficiary's injury, there will *likely* be no need for further equitable relief, in which case such relief *normally* would not be 'appropriate.'" *Varity*. 516 U.S. at 515 (emphasis added). This rule squares with the general preference for federal courts to provide relief in "equity . . . only when legal remedies were inadequate." *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959) (citations omitted); *see also N. California Power Agency v. Grace Geothermal Corp.*, 469 U.S. 1306 (1984) ("A party seeking an injunction from a federal court must invariably show that it does not have an adequate remedy at law.").

But adopting a rule that categorically determines, at the motion to dismiss stage, that a potential legal remedy available under Section 502(a)(1)(B) is adequate in all cases to address the plaintiff's injuries would impermissibly "transform[] the Supreme Court's conditional language [in *Varity*] into an absolute bar." *Rochow*, 780 F.3d at 386 (Stranch, J., dissenting). Instead, multiple other circuit courts have correctly interpreted *Varity* to "prohibit duplicate *recoveries* when a more specific section of [ERISA], such as [Section 502](a)(1)(B), provides a remedy similar to what the plaintiff seeks under the equitable catchall provision, [Section 502](a)(3)." *Moyle*, 823 F.3d at 961 (quoting *Silva*, 762 F.3d at 726 (emphasis in original)). Under this rule, "if a plaintiff succeeds on both claims [under Section 502(a)(1)(B) and Section 502(a)(3)] . . . the district court's *remedy* is limited to such equitable relief as is considered appropriate." *NYSPA*, 798 F.3d at 134 (internal citations, quotations, and alterations omitted) (emphasis in original). Therefore, in situations where

monetary relief is "an adequate remedy to make the plaintiffs whole," *Rochow*, 780 F.3d at 373, then the court need not award equitable relief.

Because this rule bars duplicate recoveries rather than duplicate causes of action, several courts have recognized that "it is not clear at the motion-to-dismiss stage of the litigation that monetary benefits under § 502(a)(1)(B) alone will provide [the plaintiff] a sufficient remedy." *NYPSA*, 798 F.3d at 134; *see also Silva*, 762 F.3d at 727 ("At the motion to dismiss stage . . . it is difficult for a court to discern the intricacies of the plaintiff's claims to . . . determine if one or both could provide adequate relief"). As a result, multiple district courts have declined to rule on the adequacy of a plaintiff's potential recovery under Section 502(a)(1)(B) at a motion to dismiss because doing so is "premature." *See, e.g.*, *Galutza*, 2008 WL 2433837, at *3; *Dennis H.*, 2019 WL 1301757, at *3; *Wit v. United Behavioral Health*, No. 14-CV-02346-JCS, 2019 WL 1033730, at *54 (N.D. Cal. Mar. 5, 2019); *see also Hancock*, 2015 WL 12750281, at *5 (stating "it is preferable to allow alternative pleading where it is not apparent that adequate recovery exists under [Section 502](a)(1), and instead decline duplicative relief as necessary later in the case"). The court agrees that it is premature to decide whether Plaintiffs' potential recovery under Section 502(a)(1)(B) is adequate to provide for a make-whole remedy.

The outcome in *CIGNA Corporation v. Amara* demonstrates why a rule barring dual recovery rather than dual causes of action is appropriate, and why it is premature at the motion to dismiss stage to make this determination. In *Amara*, the district court initially granted the plaintiffs' requested relief of plan reformation and awarded benefits under Section 502(a)(1)(B), and explicitly did not decide whether the plaintiffs could obtain relief under Section 502(a)(3). 563 U.S. at 425. After determining that the granted relief was unavailable under Section 502(a)(1)(B), the Supreme Court analyzed Section 502(a)(3) and ruled that plaintiffs may achieve the same

desired outcome as an equitable remedy under that provision. *Id.* at 439–40; *see also id.* at 444 (observing that Section 503(a)(3) relief may be appropriate because the Court "doubt[ed] that Congress would have wanted to bar those employees from relief" for their claims). The Court addressed the issue in terms of available relief, but did not prohibit plaintiffs from initially bringing a Section 502(a)(3) cause of action simply because they had already brought a claim under the more specific remedy provision in Section 502(a)(1)(B). *See id.* at 440. On remand, the Second Circuit allowed reformation of the plaintiff's benefits plan under Section 502(a)(3), which in turn lead to an award of benefits that fully remedied the plaintiffs' injuries. *Amara*, 775 F.3d at 531. Thus, the entire dispute in *Amara* centered on the issue of whether Section 502(a)(1)(B) or Section 502(a)(3) provided adequate relief. And the case was litigated in a bench trial, was twice reviewed by the Second Circuit, and obtained a ruling from the Supreme Court before a determination could be made regarding that question.

As the present case also illustrates, having district courts decide solely on the pleadings whether Section 502(a)(1)(B) may provide adequate recovery if a plaintiff prevails on her ERISA claims is an impossible task. Here, for example, the court could rule on the merits that Defendants correctly denied benefits to Plaintiffs under the terms of the Plan, which would require denying recovery under Section 502(a)(1)(B). But consistent with that ruling, the court could still find that the terms of the Plan on their face or as-applied by the insurer violate the Parity Act by imposing unequal criteria or standards to mental health treatment, which would require granting equitable relief to the Plaintiffs under Section 502(a)(3). The inverse is also true: the court could find that Defendants wrongfully denied Plaintiffs' benefits based on the terms of the Plan, but deny the Parity Act claim by finding that Defendants do not apply unequal criteria to mental health benefits. The court could also find that Defendants violated Plaintiffs' rights under both theories, or under

neither. At this stage, it is premature to tell what relief, if any, would be available to Plaintiffs, much less whether granting both monetary and equitable relief is duplicative.

The court is also guided by the general interpretive canon that "[w]hen two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other." *POM Wonderful LLC v. Coca-Cola Co*., 573 U.S. 102, 115 (2014) (citation omitted). Accordingly, the court must "interpret the statute as a symmetrical and coherent regulatory scheme, and fit, if possible, all parts into an harmonious whole." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp*., 529 U.S. 120, 133 (2000) (internal quotations and citations omitted). To rule, as Defendants urge, that "Plaintiffs cannot maintain a claim for equitable relief under Section [502](a)(3) when they are already seeking monetary relief under Section 1132(a)(1)(B)" would violate this dictate by effectively negating the Parity Act in every case where the plaintiff also plausibly alleges that they were wrongfully denied benefits. In enacting the Parity Act, Congress sought to improve mental health coverage and enforce it through ERISA "[a]fter years of discriminatory practices in plan design," H.R. REP. No. 110-374, pt. 3, at 12 (2008), and viewed achieving "parity in mental health benefits" as "necessary because of the huge impact that mental illness and substance abuse has on our society." S. REP. No. 110-53, at 2 (2007). The rule adopted by this court—that *Varity* only bars plaintiffs from maintaining duplicative ERISA claims where monetary relief is adequate to remedy the plaintiff's injury or injuries—best serves this interest and harmonizes the statute to fit the Parity Act into the "symmetrical and coherent regulatory scheme" established in ERISA. *See Brown & Williamson Tobacco Corp*., 529 U.S. at 133. And as other circuit courts have recognized, making the necessary *Varity* determinations about the duplicative nature of the claim of the adequacy of

37

the monetary remedy at the motion to dismiss stage is premature. *See, e.g.*, *Moyle*, 823 F.3d at 961; *Silva*, 762 F.3d at 726; *NYSPA*, 798 F.3d at 134.

In sum, the *Varity* Court primarily observed that "ERISA's basic purposes favor a reading . . . that provides the plaintiffs with a remedy." 516 U.S. at 513. Adopting Defendants' proposed rule would violate these "basic purposes" by leaving Plaintiffs with no remedy to enforce their rights under the Parity Act because they also plausibly alleged that Defendants violated their Plan. Therefore, the court adopts a rule consistent with the majority of circuit courts to address the meaning of *Varity* in light of *Amara*: (1) ERISA plaintiffs seeking to rectify a single injury may not use a Section 502(a)(3) cause of action to "repackage" claims available under a Section 502(a)(1)(B) wrongful denial of benefits cause of action to avoid the "arbitrary and capricious" review standard, and (2) plaintiffs may not obtain "duplicate recovery" of additional equitable relief where monetary relief is adequate to make the prevailing plaintiffs whole. Applied here, Plaintiffs can plead alternative theories of liability for wrongful denial of benefits and a violation of the Parity Act, which also seek to remedy two distinct injuries. And if Plaintiffs "succeed[] on both claims [under Section 502(a)(1)(B) and Section 502(a)(3)]" the court's "*remedy* is limited to such equitable relief as is considered appropriate" in light of the adequacy of the Section 502(a)(1)(B) relief. *NYSPA*, 798 F.3d at 134 (emphasis in original).

## C.  STANDING TO SUE UNDER ERISA

Defendants also argue that Plaintiff James A. does not have statutory standing to sue to enforce ERISA in his individual capacity. As stated above, only an ERISA plan "participant or beneficiary" may bring a civil action "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1). The burden of proof is on the plaintiff to establish that he or she is a participant or beneficiary. *See Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 474 (10th Cir. 1990). ERISA defines "participant" as

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). ERISA defines a beneficiary as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* at § 1002(8).

On a motion to dismiss for lack of standing, Plaintiffs must state facts sufficient to prove their right to sue on the face of the complaint. *See Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations *of the complaint*, and must construe *the complaint* in favor of the complaining party." (emphasis added)). Plaintiffs assert in their operative complaint that "Christine [S.] was a participant in the Plan and T.[A.] was a beneficiary in the Plan at all relevant times." Am. Compl. ¶ 3. Because the complaint does not speak to James A.'s legal status under the Plan,[13] Plaintiffs have not demonstrated his statutory standing to sue in his individual capacity. *See Michael W.*, 2019 WL 4736937, at *5 (dismissing the individual claims

---

[13] In the event Plaintiffs can show that James A. is also a beneficiary under the Plan, he would still not have individual statutory standing because he is not "the beneficiary who is making the claim" to recover benefits or enforce his rights. *Wedekind v. United Behavioral Health*, No. 1:07-CV-26 TS, 2008 WL 204474, at *4 (D. Utah Jan. 24, 2008) (rejecting standing for a parent who was merely an additional beneficiary of the insurance plan, but finding another parent, who was the participant, and their child, who was the beneficiary denied benefits, had statutory standing.) Plaintiffs also argued that James A. has statutory standing because he, as T.A.'s father, "was morally and legally obligated to pay, and did pay" for T.A.'s expenses. ECF No. 32 at 10. While that argument may go to James A.'s constitutional standing or his representative capacity as T.A.'s legal guardian, it is not relevant to his statutory standing under 29 U.S.C. § 1132(a). And although Plaintiffs listed T.A. as a minor, "in the absence of a showing of incapacity," the mere fact that James A. "may be liable under state law for [his] . . . minor [son's] medical expenses does not . . . give [him individual-capacity] standing under ERISA." *Wedekind*, 2008 WL 204474, at *4.

of a plaintiff-parent who failed to demonstrate that she was a plan participant or the beneficiary making a claim for benefits). Therefore, the court grants Defendants' motion to dismiss James A.'s claims in his individual capacity for lack of standing. However, to the extent James A.'s standing is premised on his guardian-minor relationship with T.A., he continues to have standing to sue on behalf of his minor son. *See* FED. R. CIV. P. 17(c)(1)(A) (stating that a "general guardian" may "sue . . . on behalf of a minor.")

## IV.  ORDER

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED IN PART. Plaintiff James A.'s claims in his individual capacity are dismissed with prejudice for lack of standing. In all other respects, Defendants' motion is DENIED.

Signed December 19, 2019

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge